LAW OFFICE OF JOHN C. TERLAJE, P.C.
194 Hernan Cortez Avenue
Terlaje Professional Bldg., Suite 216
Hagatna, Guam 96910
Telephone: (671) 477-8894
Facsimile: (671) 472-8896
Email: john@terlaje.net

CHOI & ITO
Attorneys at Law
CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, HI 96813-3862
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: cchoi@hibklaw.com

Attorneys for KATHLYN SELLECK, CHAPTER 7 TRUSTEE

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM
BANKRUPTCY DIVISION

| | |
|---|---|
| In re<br>POLARIS GUAM, LLC dba VERONA RESORT & SPA dba BELLAGIO SUITES & SPA,<br><br>Debtor. | Case No. 20-00065<br>Chapter 7<br><br>TRUSTEE'S MOTION TO APPROVE (1) SETTLEMENT AGREEMENT WITH FIRST HAWAIIAN BANK; AND (2) INTERIM DISTRIBUTION TO CHU-SHIANG YAO; EXHIBIT "A"; DECLARATION OF TRUSTEE<br><br>Judge: Honorable Daniel P. Collins |

KATHLYN SELLECK (the "Trustee"), the duly appointed Chapter 7 Trustee of the Estate of POLARIS GUAM LLC dba VERONA RESORT & SPA dba BELLAGIO SUITES & SPA (the "Debtor"), by and through her undersigned counsel, moves this Court for an order authorizing the Trustee to enter into a Settlement Agreement with First Hawaiian Bank ("FHB"), pursuant to a Settlement and Release Agreement (the "Settlement") in the form attached hereto as Exhibit A and incorporated herein by reference, and to make an interim distribution to Chu-Shiang Yao ("Yao").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. The major asset of the Debtor's bankruptcy estate was a 335-room hotel on the Debtor's ownership title to a fee simple parcel designated as Lot 5137-1-R1 (the "Hotel"), improvements and personal property located therein, and the Debtor's interest in a leasehold parcel designated as Lot No. 5140-4 (the "Leasehold Property"; together the "Property") located on 188 Tumon Road, Tamuning, Guam 96913.

4. In or about September 12, 2011, First Hawaiian Bank ("FHB") loaned monies (the "Loan") to the Debtor pursuant to a Loan Agreement in the original principal amount of U.S.$12,000,000.00, and a Promissory Note.

5. To secure the obligations under the loan, a Real Property Mortgage and Financing Statement, identified as Instrument No. 826348 (the "FHB Mortgage"), was recorded against the Property with the Guam Department of Land Management ("DLM") on September 13, 2011.

6. The Debtor defaulted on its obligations under FHB loan and FHB scheduled a non-judicial foreclosure auction of the Property.

7. On or about December 19, 2019, Taieasy International Co., Ltd. loaned $9,000,000.00 to the Debtor which was turned over to FHB (the "Refinance"). The FHB Mortgage was not released at the time.

8. On November 3, 2020, an Involuntary Petition against the Debtor under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") was

filed, and on December 22, 2020, an Order for Relief was entered. *See* dkt ## 1 and 15.

9. On November 19, 2021, the Trustee filed her *Motion to Sell Substantially All Of The Debtor's Assets Free And Clear Of Liens And Encumbrances; Assumption And Assignment Of Lease; And Related Relief* (the "Sale Motion"). *See* dkt # 169.

10. The Sale Motion was approved pursuant to an order entered on December 24, 2021. *See* dkt # 212.

11. As described in the Trustee's Report of Sale dated February 1, 2022, net proceeds of $8,850,948.77 and a carve out to the Trustee of $500,000 (from the ground lessor) were received by the Trustee after payment of, among other obligations, the IRS and DRT. *See* dkt # 169-3 (Ownership and Encumbrance Report).

12. The Estate currently holds approximately $8.2 million (inclusive of carve outs), after the payment of $1,200,000 to Tsai-Hung Chan (of which $70,000 was paid as a "carve out" for the estate). *See* dkt # 267 (order approving settlement with Tsai-Hung Chan).

13. On or about April 29, 2022, FHB filed Proof of Claim No. 13 in the Bankruptcy Case asserting a secured claim against the Debtor in the amount of $137,987.61(the "FHB Claim.") for approximately $113,205.00 of the FHB claim for a prepayment charge and approximately $25,100.00 of the FHB Claim is for legal fees.

14. To avoid the expense and uncertainty of further litigation and delay, the Parties have agreed to fully and finally resolve the FHB Claim, as well as all other claims between them, whether known or unknown, without further litigation, controversy, or expense.

15. The proposed Settlement (which is set forth in full in the Settlement attached hereto as Exhibit A) provides for the following pertinent terms:

3

a. FHB will have an allowed secured claim in the amount of $115,000.00 (the "FHB Allowed Secured Claim");

b. Trustee shall promptly seek an order approving the Settlement and authorizing the distribution of the Allowed Secured Claim that shall be paid to FHB promptly by the Trustee upon entry of the order approving the Settlement.

<u>THE SETTLEMENT AGREEMENT WITH FHB SHOULD BE APPROVED</u>

16. The Trustee requests the Court's approval of the Settlement pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure which authorizes this Court to approve a compromise or settlement. This section provides that "on motion by the trustee and after hearing on notice to creditors . . . the court may approve a compromise or settlement." Fed.R.Bankr. P. 9019(a).

17. Under the standards established by the Ninth Circuit, the Court should approve a compromise or settlement if it is "fair and equitable." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 838 F.2d 610, 620 (9th Cir. 1988) (quoting *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, *Martin v. Robinson*, 479 U.S. 854 (1986)). Specific factors to be considered in determining whether a compromise or settlement is fair and equitable include: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the proper deference to the reasonable views of parties having a paramount interest. *In re Woodson*, 838 F.2d at 620. *(citation omitted)*.

18. The Trustee submits that the proposed Settlement is fair and equitable and satisfies the foregoing standards. With regard to the first and third factors, the Trustee believes

4

that the FHB has a strong claim against the estate. Upon information and belief, the $9 million payoff was made outside of escrow (hence there was apparently no request for a payoff). The Trustee believes that Settlement is fair and reasonable. Continued litigation would cost the Estate substantial fees and delay the administration of this estate. Moreover, FHB has recently asserted that its secured claim is, with interest and fees, in excess of $150,000.

19. In evaluating the fairness of a compromise or settlement, "a trial or 'mini-trial' on the merits is not required." *Official Committee of Unsecured Creditors v. James Talcott, Inc. (In re International Distrib. Centers, Inc.),* 103 B.R. 420, 423 (S.D.N.Y. 1989). Rather, the Court must simply consider the various factors that determine the reasonableness of the compromise. *See In re* A&C, 784 F.2d at 1381. This Court should approve the settlement as long as it is above the "lowest point of reasonableness." *In re International Distrib. Centers, Inc.*, at 423 (citations omitted). The Trustee submits that the Settlement is well within the lowest point of reasonableness given the amount asserted by FHB and the fact that FHB secured position, if upheld, would be senior to other secured creditors.

TRUSTEE SHOULD BE ALLOWED TO MAKE AN INTERIM DISTRIBUTION TO YAO

20. The Trustee also seeks to make an interim distribution of $4 million to Yao ($3.6 million after deducting $400,000 "carve out" for the estate). The Court previously approved a settlement agreement the ("Yao Settlement Agreement") between the Trustee and Yao whereby Yao was deemed to have an allowed secured claim in the amount of $11 million (with distributions subject to a "carve-out" or retention for the estate).

21. While not explicit, the Yao Settlement Agreement contemplates at least one interim distribution.

5

3. **Payment to the Trustee**. In the event Yao is entitled to receive one or more monetary distributions in this Bankruptcy Case on account of his Allowed Secured Claim ("Distributions"), Yao agrees that the Trustee is entitled to retain a percentage of such Distributions for the benefit of the Debtor's bankruptcy estate (the "Retention") as set forth below:

   a. For any and all Distributions to Yao totaling $5,000,000 USD or less, the Retention amount will be 10% of such Distributions—therefore, for the avoidance of doubt, the total Retention amount for the first $5,000,000 USD in Distributions is $500,000 USD;

   b. At the point total Distributions exceed $5,000,000 USD, the Retention amount will equal 15% of such Distributions in excess of $5,000,000 USD;

   c. The total Retention amount shall not exceed $750,000 USD (the "Retention Cap"); and

   d. In the event the Retention Cap is reached, Yao is entitled to 100% of all further Distributions.

22. There are approximately $2.4 million in "alleged" secured claims with higher priority than Yao's allowed secured claim ($2.310 million of which is being disputed in the pending adversary proceeding against Wonderful Laurel).

23. The partial payment of $4 million to Yao will not unduly deplete the Estate.

24. In fact, the proposed interim distribution would benefit the estate in that it would decrease the amount of the Trustee's Bond required. It will also largely obviate the need for the Trustee to seek a higher return for the remaining funds in the estate in this rising interest rate climate.

25. This Court, pursuant to Section 105 of the Bankruptcy Code, may authorize the Chapter 7 trustee to make an interim distribution. Courts in other jurisdictions allowed interim distributions. *See In re Bird*, 565 B.R. 382 (Bankr. S.D. Tex. 2017) (allowing chapter 7 trustee to make interim distribution on unsecured claims while reserving an amount sufficient to satisfy administrative expenses that may arise); *In re Scimeca Found., Inc.*, 497 B.R. 753 (Bankr. E.D.

6

Pa. 2013) settlement authorizing trustee to make interim distribution to specific creditor was reasonable);

WHEREFORE, the Trustee respectfully requests that the Court enter an order: (a) approving the Settlement in the form attached hereto and authorize the Trustee to pay FHB its $115,000 upon entry of an order approving the Settlement, (b) authorize the Trustee to make a $4 million interim distribution to Yao (net $3.6 million), and (c) granting any other and further relief that this Court deems just and proper.

DATED: Honolulu, Hawaii, October 12, 2022.

/s/ Chuck C. Choi
CHUCK C. CHOI
ALLISON A. ITO
JOHN C. TERLAJE
Attorneys for Kathlyn Selleck,
Chapter 7 Trustee

# EXHIBIT A

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made as of August 6, 2022, by and between KATHLYN SELLECK, CHAPTER 7 TRUSTEE ("Trustee") for bankruptcy estate (the "Estate") of Polaris Guam LLC (the "Debtor") and FIRST HAWAIIAN BANK ("FHB"). The Trustee and FHB are collectively referred to herein as the "Parties."

## RECITALS

On November 3, 2020 (the "Petition Date"), an involuntary petition under Chapter 7 of the United States Bankruptcy Code was filed against the Debtor in the United States District Court for the District of Guam, Bankruptcy Division (the "Bankruptcy Court"), commencing *In re Polaris Guam LLC*, bankruptcy case no. 20-00065 (the "Bankruptcy Case").

On November 19, 2021, the Trustee filed a Motion to Sell Substantially All of the Debtor's Assets Free and Clear of Liens and Encumbrances; Assumption and Assignment of Lease; and Related Relief [Docket. No. 169] (the "Sale Motion") that was granted.

Pursuant to the Order Granting Trustee's Motion to Sell Substantially All of the Debtor's Assets Free and Clear of Liens and Encumbrances; Assumption and Assignment of Lease and Related Relief [Docket No. 212] (the "Sale Order"), all liens, encumbrances, and other property interests attach to the net proceeds of that sale with the same force, effect, validity and priority that such liens, encumbrances, and other property interests had in the Properties prior to the sale.

As described in the Trustee's Report of Sale dated February 1, 2022 [Docket No. 230] on the sale of the Properties, closing proceeds of $8,850,948.77 and a carve out to the Trustee of $500,000.00 were received into the bankruptcy estate's bank accounts, the Secured Tax Payment Claims of the Guam and DRT and the IRS were paid, and as described in the Ownership and Encumbrance Report, which was filed with the Court as Exhibit C to the Sale Motion.

On or about December 19, 2019, Taieasy International Co., Ltd. loaned $9,000,000.00 to the Debtor which was turned over to FHB which had commenced a non-judicial foreclosure against the Debtor (the "Refinance"). As a result, FHB suspended its foreclosure.

On or about April 29, 2022, FHB filed Proof of Claim No. 13 in the Bankruptcy Case asserting a secured claim against the Debtor in the amount of $137,987.61(the "FHB Claim."). Approximately $113,205.00 of the FHB claim for a prepayment charge and approximately $25,100.00 of the FHB Claim is for legal fees.

To avoid the expense and uncertainty of further litigation and delay, the Parties have agreed to fully and finally resolve the FHB Claim, as well as all other claims between them, whether known or unknown, without further litigation, controversy, or expense. The purpose of this Agreement is to document the terms upon which the Parties have agreed to settle their disputes.

4452879.1

## TERMS OF THE AGREEMENT

In consideration of the mutual promises below, the Parties agree as follows:

1. <u>Allowance of FHB Claim</u>. The FHB Claim shall be an Allowed Secured Claim against the Debtor and the Estate in the amount of $115,000.00 (the "Allowed Secured Claim"), on condition that FHB receive an early monetary distribution as set forth herein on account of its Allowed Secured Claim. The Allowed Secured Claim shall be paid to FHB promptly by the Trustee upon entry of an Order Approving the Settlement with FHB, and the Trustee shall not wait for the appeal period for that order to lapse prior to making the distribution to FHB. It is not necessary for FHB to file a further proof of claim in the Bankruptcy Case, and this Settlement Agreement shall be deemed evidence of FHB's Allowed Secured Claim. FHB represents that FHB does not hold any other claims against the Debtor or its bankruptcy estate and the Allowed Secured Claim will be its only claim in this Bankruptcy Case. This Settlement Agreement shall not be affected by conversion of the Debtor's Bankruptcy Case to a case under a different chapter or dismissal of the Debtor's Bankruptcy Case.

2. <u>Bankruptcy Court Approval</u>. The terms of this Agreement shall be subject to the approval of the Bankruptcy Court in the Bankruptcy Case. Following the Bankruptcy Court's approval of the terms of this Agreement, the terms of this Agreement, including the mutual releases set forth herein, shall become effective.

3. <u>Mutual Releases of All Claims, Known or Unknown</u>. For the consideration described above, as well as the promises contained in this Agreement:

    A. The Trustee, on behalf of the Debtor's bankruptcy estate and its officers, directors, members, employees, agents and attorneys, hereby release FHB, and its respective officers, directors, members, employees, agents and attorneys from any and all actual and alleged claims, demands, damages, legal actions, causes of action and suits in law or equity, of whatever kind or nature, known or unknown, asserted or unasserted, fixed or contingent, that arose before the date of this Agreement ("FHB Released Claims").

    B. FHB hereby releases the Trustee, her agents and attorneys, the Estate, the Debtor and its officers, directors, members, employees, agents and attorneys, from any and all actual and alleged claims, demands, damages, legal actions, causes of action and suits in law or equity, of whatever kind or nature, known or unknown, asserted or unasserted, fixed or contingent, that arose before the date of this Agreement; other than the FHB Claim described herein ("Estate Released Claims").

4. <u>Motion to Approve Compromise</u>. The Trustee shall draft and file a Motion to Approve the Compromise in the Bankruptcy Case seeking approval of the terms set forth in this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5. <u>Severability</u>. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

6. <u>Attorneys' Fees and Costs</u>.  Each of the Parties shall bear their own attorneys' fees and costs incurred in connection with this Agreement and the bankruptcy proceeding.

7. <u>Governing Law/Jurisdiction for Disputes</u>.  This Agreement shall be governed by and construed in accordance with the laws of the Territory of Guam without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the Territory of Guam. The Parties consent to the exclusive personal and subject matter jurisdiction of and venue in the District Court of Guam, Territory of Guam Bankruptcy Division for all disputes arising out of or relating to this Agreement, only to the extent such disputes concern or relate to the Bankruptcy Case. Any such disputes shall be brought only in the District Court of Guam, Territory of Guam Bankruptcy Division, which Court shall retain exclusive jurisdiction to enforce the terms of this Agreement.

8. <u>Complete Bar</u>.  Acceptance of the consideration described above and execution of this Agreement is a complete and final bar to any and all claims, demands or actions for damages against any released party which relate to, arise from, or involve the FHB Released Claims and the Estate Released Claims.

9. <u>Further Action</u>. Each of the Parties agrees to execute and deliver such other documents and instruments and to take such further action as may be reasonably necessary to carry out fully the intent and purposes of this Agreement.

10. <u>No Wrongdoing</u>.  This Agreement is made strictly for the purpose of resolving the disputes between the Debtor and FHB and avoiding the expense and risk of further litigation.  It is not, and shall not be construed, as an admission of liability or wrongdoing by any party.

11. <u>Representation of Authority</u>.  Each person signing this Agreement represents and warrants that he or she has authority to execute this Agreement on behalf of the entity for which he or she is a representative.

12. <u>Voluntary Agreement</u>.  This Agreement is made and executed by the Parties with the advice of counsel.  The Parties acknowledge that this Agreement is executed by them of their own free will, that they are aware of all of the relevant facts and their rights, and that they have not been improperly influenced or induced to make this compromise settlement as a result of any representation or act by any representative of the Parties.

13. <u>Binding on Successors and Assigns</u>.  This Agreement shall inure to the benefit of, and shall be binding upon, each of the Parties hereto, and their respective successors and assigns.

14. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Parties pertaining to the subject matter of this Agreement and supersedes and replaces all prior negotiations, agreements and proposed agreements, written or

-3-

Case 20-00065   Document 269   Filed 10/13/22   Page 11 of 14

verbal. This Agreement shall not be amended, modified or otherwise changed or terminated, and no provision of this Agreement may be waived unless executed in writing by all Parties to this Agreement. No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement. nor shall such waiver constitute a continuing waiver unless otherwise expressly provided in writing signed by all Parties.

15. <u>No Party Shall Be Deemed the Drafter</u>. In entering into this Agreement, the Parties represent to each other that they and their counsel have read this Agreement and that its terms are fully understood and voluntarily accepted by them. It is further understood and agreed by the Parties that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

16. <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts (including by facsimile or email/PDF), each of which shall be deemed an original.

"TRUSTEE"      KATHLYN SELLECK, CH. 7 TRUSTEE FOR
               POLARIS GUAM LLC

               _____
               Kathlyn Selleck, Trustee aforesaid

"FHB"          FIRST HAWAIIAN BANK

               By: _____
               Printed Name: _Michael Lee_
               Its: _Vice President_

DISTRICT COURT OF GUAM
TERRITORY OF GUAM
BANKRUPTCY DIVISION

In re

POLARIS GUAM LLC dba VERONA RESORT & SPA dba BELLAGIO SUITES & SPA,

Debtor.

Case No. 20-00065
(Chapter 7)

DECLARATION OF TRUSTEE

I, KATHLYN SELLECK, hereby declare as follows:

1. I have personal knowledge of facts stated in this Declaration and if called as a witness in this action, I could and would testify to all matters set forth herein of my own knowledge.

2. I am the duly appointed Trustee of the Estate of POLARIS GUAM LLC dba VERONA RESORT & SPA dba BELLAGIO SUITES & SPA ("Debtor"), the above-named Debtor, and submit this Declaration in support of my *Motion To Approve (1) Settlement Agreement with First Hawaiian Bank; and (2) Interim Distribution to Chu-Shiang Yao* (the "Motion") filed herewith. Terms used in this Declaration that are not defined shall have the meanings given them in the Memorandum in support of the Motion.

3. The statements in the Motion are true and correct to the best of my information and belief and reflect my understanding and knowledge of the matters and issues regarding the Estate and case.

4. Attached to the Memorandum as Exhibit "A" is a true and correct copy of the proposed Settlement with First Hawaiian Bank.



5. For the reasons set forth in the Motion, I believe that the Settlement is fair and equitable and is in the best interest of the Estate and its creditors.

6. In the exercise of my business judgment, I believe it is in the best interest of the estate to make an interim distribution to Yao.

I declare under penalty of perjury under the laws of the Territory of Guam and the United States that the foregoing is true and correct.

Executed October 12, 2022, Guam.

*/s/ Kathlyn Selleck*
KATHLYN SELLECK